DAVID K. TELLEKSON (*pro hac vice* forthcoming)
dtellekson@fenwick.com
JONATHAN G. TAMIMI (CSB No. 305493)
jtamimi@fenwick.com
FENWICK & WEST LLP
JACOB E. SIMMONS (*pro hac vice* forthcoming)
jsimmons@fenwick.com
401 Union St., 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
730 Arizona Ave., 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Facsimile: 650.938.5200

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> X-NAUT LLC, <br><br> Defendant. | Case No. 2:25-cv-10674 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff National Products Inc. ("NPI" or "Plaintiff") brings this action against Defendant X-Naut LLC ("X-Naut" or "Defendant") for an injunction, damages, and other appropriate relief to stop X-Naut from violating NPI's patent rights.  NPI states and alleges as follows:

## THE PARTIES

1.      NPI is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at 8410 Dallas Avenue S., Seattle, Washington 98108.

2.      NPI is a market leader in the design, manufacture, and sale of innovative docking cradles and protective cover products, including docking cradles and protective covers for tablets, cellular phones, and other portable devices, which are used, for example, in cars, trucks, bikes, planes, boats, motorcycles, and in offices, homes, retail stores, and healthcare settings.

3.      Upon information and belief, X-Naut LLC is a limited liability corporation organized and existing under the laws of the State of California having its principal place of business at 1332 Gladys Avenue, Long Beach, California 90804.

4.      Upon information and belief, X-Naut is in the business of providing protective covers and docking systems for portable electronic devices, including the products that are at issue in this lawsuit.  Upon information and belief, X-Naut advertises, markets, and sells its products, including the products that are the subject of the patent infringement alleged in this lawsuit, to the public throughout the United States, including within this judicial district.

## NATURE OF THE ACTION

5.      This is a civil action for infringement of U.S. Patent Nos. 10,054,984 ("the '984 patent"); 10,630,334 ("the '334 patent"); 10,778,275 ("the '275 patent"); 11,476,884 ("the '884 patent"); and 12,143,141 ("the '141 patent") under the patent laws of the United States, including, without limitation, 35 U.S.C. § 1 *et seq.*

Fenwick & West LLP
Attorneys at Law

1

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over X-Naut.  Upon information and belief, X-Naut maintains a regular and established place of business in this judicial district.  This Court also has personal jurisdiction over X-Naut because, upon information and belief, X-Naut has committed, aided, abetted, contributed to, and/or participated in the commission of patent infringement in this judicial district.

8.      Upon information and belief, X-Naut sells and offers to sell its infringing products directly through its website to the public throughout the United States, including this judicial district.

9.      Upon information and belief, X-Naut has its headquarters and principal place of business within this judicial district.  For example, X-Naut lists the following address on its LinkedIn webpage: 1332 Gladys Ave, Long Beach, California 90804, US.  As of the date of this filing, X-Naut has listed this same address as its principal place of business with the California Secretary of State.

10.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because X-Naut has committed acts of infringement in this District, and upon information and belief, X-Naut has a regular and established place of business in this District.

## THE '984 PATENT

11.     On August 21, 2018, the '984 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '984 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

12.     NPI is the owner, by assignment, of all right, title, and interest in the '984 patent, including the rights to exclude others and to sue and recover damages for infringement.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

13. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '984 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '984 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '984 patent.

14. A true and correct copy of the '984 patent is attached as **Exhibit A**.

### THE '334 PATENT

15. On April 21, 2020, the '334 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '334 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

16. NPI is the owner, by assignment, of all right, title, and interest in the '334 patent, including the rights to exclude others and to sue and recover damages for infringement.

17. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '334 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '334 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '334 patent.

18. A true and correct copy of the '334 patent is attached as **Exhibit B**.

### THE '275 PATENT

19. On September 15, 2020, the '275 patent, entitled "Docking Sleeve With

3

Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '275 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

20. NPI is the owner, by assignment, of all right, title, and interest in the '275 patent, including the rights to exclude others and to sue and recover damages for infringement.

21. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '275 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '275 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '275 patent.

22. A true and correct copy of the '275 patent is attached as **Exhibit C**.

## **THE '884 PATENT**

23. On October 18, 2022, the '884 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '884 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

24. NPI is the owner, by assignment, of all right, title, and interest in the '884 patent, including the rights to exclude others and to sue and recover damages for infringement.

25. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '884 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the '884 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '884 patent.

26.    A true and correct copy of the '884 patent is attached as **Exhibit D**.

## **THE '141 PATENT**

27.    On November 12, 2024, the '141 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '141 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

28.    NPI is the owner, by assignment, of all right, title, and interest in the '141 patent, including the rights to exclude others and to sue and recover damages for infringement.

29.    To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '141 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '141 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '141 patent.

30.    A true and correct copy of the '141 patent is attached as **Exhibit E**.

## **COUNT I**
## **INFRINGEMENT OF UNITED STATES PATENT NO. 10,054,984**

31.    NPI realleges and incorporates by reference the allegations in paragraphs 1–30 above.

32.    X-Naut has directly infringed and continues to directly infringe at least claim 1 of the '984 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

and used with portable electronic devices, including but not limited to X-Naut's FlexGrip and X90 lines of products.

33. Inspection of the FlexGrip and X90 lines of products demonstrates that they meet each and every element of claim 1 of the '984 patent, either literally or by the doctrine of equivalents.

34. For example, the FlexGrip and X90 products comprise a protective skin for an electronic device, the skin comprising a flexible protective cover configured and arranged to receive an electronic device and extend around four side faces of the electronic device, extend around a peripheral edge of a front face of the electronic device, and extend around at least a peripheral edge of a back face of the electronic device:

 

35. Further, the FlexGrip and X90 products comprise an adapter coupled to the cover, the adapter comprising a male plug comprising a plurality of connectors extending into the cover in an arrangement for mating with a female socket of the electronic device, a contactor comprising a contactor surface and a plurality of contacts exposed and arranged on the contactor surface and electrically coupled to one or more of the connectors of the male plug:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    36.    As shown above and below, the cover of the FlexGrip and X90 lines of

16 products further comprises a male positioning interface defining a rim surrounding,

17 and in contact with, a perimeter of the contactor surface of the contactor of the adapter

18 to guide proper mating of the contactor of the adapter to an external connector.

19
20
21
22
23
24
25
26
27
28



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

37.    Upon information and belief, X-Naut has induced and continues to induce infringement of one or more claims of the '984 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '984 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '984 patent by such customers or third parties.  X-Naut's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://x-naut.com/pages/announcing-the-flexgrip-series) and providing instructions on how to use these products (for example, https://www.youtube.com/watch?v=p5RZYSpfgfQ).

38.    Upon information and belief, X-Naut has contributed to and continues to contribute to the infringement of one or more claims of the '984 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by X-Naut are key components to the docking systems claimed in the '984 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '984 patent.  Upon information and belief, X-Naut supplied and continues to supply these components, with the knowledge of the '984 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '984 patent. Further, X-Naut knows that these components are especially made and/or especially adapted for use as claimed in the '984 patent.  Moreover, X-Naut knows that there is no substantial non-infringing use of these components.

39.    As a direct and proximate consequence of X-Naut's infringement of the '984 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless X-Naut is enjoined from infringing the '984 patent.

40.    X-Naut has had actual knowledge of the '984 patent and its infringement thereof since at least October 23, 2025, when NPI notified X-Naut that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '984 patent.

41.    Upon information and belief, X-Naut's continued infringement of the '984 patent is willful.

## COUNT II
## INFRINGEMENT OF UNITED STATES PATENT NO. 10,630,334

42.    NPI realleges and incorporates by reference the allegations in paragraphs 1–41 above.

43.    X-Naut has directly infringed and continues to directly infringe at least claim 1 of the '334 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to X-Naut's X30 line of products.

44.    Inspection of the X30 line of products demonstrates that they meet each and every element of claim 1 of the '334 patent, either literally or by the doctrine of equivalents.

45.    The X30 line of products comprises an arrangement comprising an adapter coupleable to a portable electronic device for mating with an external connector, the adapter comprising a contactor and a male positioning interface, the contactor comprising a contactor surface and a plurality of contacts exposed and arranged on the contactor surface and electrically coupleable to the portable electronic device, the male positioning interface defining a rim surrounding, and in

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

contact with, a perimeter of the contactor surface of the contactor of the adapter to guide proper mating of the contactor of the adapter to the external connector:



46.    Further, as shown above, the X30 line of products comprise a hard shell configured to receive the portable electronic device and adapter, wherein the hard shell is configured so that the adapter extends out of the hard shell for mating with the external connector.

47.    Additionally, as shown below, the X30 products comprise an adapter that is detachable from the hard shell by a user:



48.    Upon information and belief, X-Naut has induced and continues to induce infringement of one or more claims of the '334 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '334 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '334 patent by such customers or third parties.  X-Naut's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://x-naut.com/pages/x90-cooling-cases) and providing instructions on how to use these products (for example, https://x-naut.com/pages/instructions).

49.    Upon information and belief, X-Naut has contributed to and continues to contribute to the infringement of one or more claims of the '334 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by X-Naut are key components to the docking systems claimed in the '334 patent.  When, for example, a protective cover is used

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '334 patent. Upon information and belief, X-Naut supplied and continues to supply these components, with the knowledge of the '334 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '334 patent. Further, X-Naut knows that these components are especially made and/or especially adapted for use as claimed in the '334 patent. Moreover, X-Naut knows that there is no substantial non-infringing use of these components.

50.    As a direct and proximate consequence of X-Naut's infringement of the '334 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless X-Naut is enjoined from infringing the '334 patent.

51.    X-Naut has had actual knowledge of the '334 patent and its infringement thereof since at least October 23, 2025, when NPI notified X-Naut that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '334 patent.

52.    Upon information and belief, X-Naut's continued infringement of the '334 patent is willful.

**COUNT III**
**INFRINGEMENT OF UNITED STATES PATENT NO. 10,778,275**

53.    NPI realleges and incorporates by reference the allegations in paragraphs 1–52 above.

54.    X-Naut has directly infringed and continues to directly infringe at least claim 1 of the '275 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to X-Naut's X30 line of products.

55.    Inspection of the X30 line of products demonstrates that they meet each

1   and every element of claim 1 of the '275 patent, either literally or by the doctrine of

2   equivalents.

3        56.    For example, X-Naut's X30 line of products comprise an arrangement

4   for receiving an electronic device, the arrangement comprising a cover comprising a

5   panel and a skirt surrounding the panel, the panel comprising an exterior surface,

6   wherein the panel and the skirt form an interior cavity therebetween, wherein the

7   interior cavity is configured and arranged to receive an electronic device, wherein the

8   cover is configured and arranged to cover a back face of the electronic device with

9   the panel, to at least partially cover a plurality of side faces of the electronic device,

10  and to extend around a peripheral edge of a front face of the electronic device to

11  secure the electronic device within the cover:



24       57.    As shown above, the X30 line of products further comprise a male plug

25  comprising a plurality of connectors extending into the interior cavity of the cover,

26  wherein the male plug is positioned in the cover for mating with a female socket of

27  the electronic device when received in the cover.

28       58.    Additionally, as shown above, the X30 line of products comprise a

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

contactor disposed on the exterior surface of the panel and configured to be positioned over the back face of the electronic device when the electronic device is received in the interior cavity, the contactor comprising a plurality of electrical contacts; and electrical conductors extending within the cover and electrically interconnecting the electrical contacts of the contactor with the connectors of the male plug.

59.    Upon information and belief, X-Naut has induced and continues to induce infringement of one or more claims of the '275 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '275 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '275 patent by such customers or third parties.  X-Naut's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://x-naut.com/pages/x30-solutions); and providing instructions on how to use these products (for example, https://x-naut.com/pages/instructions).

60.    Upon information and belief, X-Naut has contributed to and continues to contribute to the infringement of one or more claims of the '275 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by X-Naut are key components to the docking systems claimed in the '275 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '275 patent.  Upon information and belief, X-Naut supplied and continues to supply these

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

components, with the knowledge of the '275 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '275 patent. Further, X-Naut knows that these components are especially made and/or especially adapted for use as claimed in the '275 patent. Moreover, X-Naut knows that there is no substantial non-infringing use of these components.

61.    As a direct and proximate consequence of X-Naut's infringement of the '275 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless X-Naut is enjoined from infringing the '275 patent.

62.    X-Naut has had actual knowledge of the '275 patent and its infringement thereof since at least October 23, 2025, when NPI notified X-Naut that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '275 patent.

63.    Upon information and belief, X-Naut's continued infringement of the '275 patent is willful.

**COUNT IV**
**INFRINGEMENT OF UNITED STATES PATENT NO. 11,476,884**

64.    NPI realleges and incorporates by reference the allegations in paragraphs 1–63 above.

65.    X-Naut has directly infringed and continues to directly infringe at least claim 1 of the '884 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to X-Naut's X30, X90, and FlexGrip lines of products.

66.    Inspection of the X30, X90, and FlexGrip lines of products demonstrates that they meet each and every element of claim 1 of the '884 patent, either literally or by the doctrine of equivalents.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

67.    The X30, X90, and FlexGrip lines products comprise an arrangement comprising an adapter coupleable to a portable electronic device and configured for mating with an external connector, the adapter comprising a contactor, a male plug, and a male positioning interface, the contactor comprising a contactor surface and a plurality of contacts exposed and arranged on the contactor surface and electrically coupleable to the portable electronic device, wherein the contactor surface is configured to be parallel to a nearest surface of the portable electronic device when the portable electronic device is coupled to the adapter, the male plug comprising a plurality of connectors configured for mating with a female socket of the portable electronic device to electrically couple the connectors to the portable electronic device, wherein the connectors are electrically coupled to the contacts of the contactor, wherein the male positioning interface is configured to guide proper mating of the contactor of the adapter to the external connector:

 

68.    As shown above, the X30, X90, and FlexGrip lines of products further comprise a hard shell configured to receive the portable electronic device and adapter, wherein the hard shell is configured so that the male positioning interface of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the adapter at least partially extends out of the hard shell for mating with the external connector.

69. Additionally, as shown below, the X30, X90, and FlexGrip lines of products further comprise an adapter that is detachable from the hard shell.



70. Upon information and belief, X-Naut has induced and continues to induce infringement of one or more claims of the '884 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '884 patent. The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '884 patent by such customers or third parties. X-Naut's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://x-naut.com/pages/x30-solutions); and providing instructions on how to use these products (for example, https://x-naut.com/pages/instructions).

71. Upon information and belief, X-Naut has contributed to and continues to contribute to the infringement of one or more claims of the '884 patent, including but not limited to claim 1 by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

cradles. These components supplied by X-Naut are key components to the docking systems claimed in the '884 patent. When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '884 patent. Upon information and belief, X-Naut supplied and continues to supply these components, with the knowledge of the '884 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '884 patent. Further, X-Naut knows that these components are especially made and/or especially adapted for use as claimed in the '884 patent. Moreover, X-Naut knows that there is no substantial non-infringing use of these components.

72.     As a direct and proximate consequence of X-Naut's infringement of the '884 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless X-Naut is enjoined from infringing the '884 patent.

73.     X-Naut has had actual knowledge of the '884 patent and its infringement thereof since at least October 23, 2025, when NPI notified X-Naut that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '884 patent.

74.     Upon information and belief, X-Naut's continued infringement of the '884 patent is willful.

**COUNT V**
**INFRINGEMENT OF UNITED STATES PATENT NO. 12,143,141**

75.     NPI realleges and incorporates by reference the allegations in paragraphs 1–74 above.

76.     X-Naut has directly infringed and continues to directly infringe at least claim 1 of the '141 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to X-Naut's X30,

1    X90, and FlexGrip lines of products.

2    77.    The X30, X90, and FlexGrip lines of products meet each and every

3    element of claim 1 of the '141 patent, either literally or by the doctrine of equivalents.

4    78.    The X30, X90, and FlexGrip lines of products comprise protective case

5    for a portable electronic device, the protective case comprising a center panel and a

6    side skirt surrounding the center panel, the center panel comprising an exterior

7    surface, wherein the center panel and the side skirt form an interior cavity

8    therebetween, wherein the interior cavity is configured and arranged to receive the

9    portable electronic device, wherein the protective case is configured and arranged to

10    cover a back face of the portable electronic device with the center panel, cover at

11    least a portion of each side face of the portable electronic device with the side skirt,

12    and to extend around a peripheral edge of a front face of the portable electronic device

13    to secure the portable electronic device within the protective case and wherein the

14    exterior surface is opposite to the interior cavity:

Fenwick & West LLP
Attorneys at Law
Mountain View

   

25    79.    As shown above, the X30, X90, and FlexGrip lines of products further

26    comprise a male plug extending into the interior cavity of the protective case and

27    comprising a plurality of first contacts, wherein the male plug is positioned in the

1  protective case for mating with a female socket of the portable electronic device when

2  received in the protective case.

3      80.    Additionally, as shown above, the X30, X90, and FlexGrip cases further

4  comprise a plurality of second contacts arrayed on a portion of the exterior surface

5  of the center panel that is parallel to the back face of the portable electronic device,

6  and positioned over the back face of the portable electronic device, when the portable

7  electronic device is received in the interior cavity, wherein the plurality of second

8  contacts comprises at least three circular contacts, at least three annular contacts, or

9  at least three contacts spaced laterally along the exterior surface of the center panel,

10  wherein at least one of the second contacts is electrically coupled to at least one of

11  the first contacts.

12      81.    Further still, as shown above, the X30, X90, and FlexGrip cases further

13  comprise second contacts disposed on a surface that is recessed relative to an adjacent

14  portion of the exterior surface of the center panel.

15      82.    Upon information and belief, X-Naut has induced and continues to

16  induce infringement of one or more claims of the '141 patent, including but not

17  limited to claim 1, by inducing its customers and other third parties to use without

18  authorization the docking systems claimed in the '141 patent.  The use, without

19  authorization, of the docking system constitutes infringement, literally or under the

20  doctrine of equivalents, of one or more claims of the '141 patent by such customers

21  or third parties.  X-Naut's acts of inducement include:  providing its customers with

22  the claimed docking systems and components thereof and intending customers to use

23  according to their intended use; advertising these products and their intended use

24  through its own and third-party websites (for example, https://x-naut.com/pages/x30-

25  solutions); and providing instructions on how to use these products (for example,

26  https://x-naut.com/pages/instructions).

27      83.    Upon information and belief, X-Naut has contributed to and continues

28  to contribute to the infringement of one or more claims of the '141 patent, including

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles. These components supplied by X-Naut are key components to the docking systems claimed in the '141 patent. When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '141 patent. Upon information and belief, X-Naut supplied and continues to supply these components, with the knowledge of the '141 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '141 patent. Further, X-Naut knows that these components are especially made and/or especially adapted for use as claimed in the '141 patent. Moreover, X-Naut knows that there is no substantial non-infringing use of these components.

84.    As a direct and proximate consequence of X-Naut's infringement of the '141 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless X-Naut is enjoined from infringing the '141 patent.

85.    X-Naut has had actual knowledge of the '141 patent and its infringement thereof since at least October 23, 2025, when NPI notified X-Naut that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '141 patent.

86.    Upon information and belief, X-Naut's continued infringement of the '141 patent is willful.

## PRAYER FOR RELIEF

WHEREFORE, NPI prays for the following relief:

a.    A judgment that X-Naut LLC has infringed the '984, '334, '275, '884, and '141 patents;

b.    An order preliminarily and permanently enjoining and restraining X-

21

Naut LLC, its officers, directors, agents, servants, employees, licensees, attorneys, and all other persons acting under or through them, directly or indirectly, from infringing the '984, '334, '275, '884, and '141 patents;

c.      A judgment and order requiring that X-Naut LLC pay damages under 35 U.S.C. § 284, with prejudgment and post-judgment interest;

d.      A judgment that X-Naut LLC's infringement has been willful, and that damages are increased three-fold;

e.      A judgment and order directing X-Naut LLC to pay the costs of this action, including all disbursements and attorney fees as provided by 35 U.S.C. § 285, with prejudgment interest; and

f.      Such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

NPI hereby demands a trial by jury of all issues so triable.


Dated:  November 6, 2025          Respectfully submitted,

FENWICK & WEST LLP


By:/s/*Jonathan G. Tamimi*
   Jonathan G. Tamimi (CSB No. 305493)

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW